IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OGONTZ FIRE COMPANY, et al.**<br>**Plaintiffs,**<br>v.<br>**CHELTENHAM TOWNSHIP, et al.**<br>**Defendants.** | **CIVIL ACTION NO. 23-569** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                       **July 16, 2025**

After the Court granted in part and denied in part Defendants Cheltenham Township ("Township"), the Board of Commissioners of Cheltenham Township ("BOC"), and the Cheltenham Township Fire Board's motion to dismiss, remaining Defendant Township filed its Answer. The Township also filed a Counterclaim against Plaintiff Ogontz Fire Company ("Ogontz Fire") for contractual indemnity.[1] Plaintiff Ogontz Fire has moved to dismiss Cheltenham Township's Counterclaim. For the reasons stated below, Ogontz Fire's motion to dismiss will be granted.

**I.     BACKGROUND[2]**

    **A.     Factual Background**

Cheltenham Township is a home rule township in Montgomery County, Pennsylvania, organized under the Pennsylvania Home Rule Charter and Optional Plans Law.[3] The Cheltenham

---

[1] *See* Answer & Countercl. at 21 [Doc. No. 20].

[2] The facts alleged are taken as true for the purposes of this Motion to Dismiss. Much of the factual and procedural background in this case can be found in the Court's Memorandum Opinion denying Defendants' Motion to Dismiss. [Doc. No. 16]. The relevant background is repeated here as necessary to provide context.

[3] Act of April 13, 1972, *as amended, formerly* 53 Pa. Stat. §§ 1-101-1-1309, *repealed by* Act of December 19, 1996, P.L. 1158, No. 177, § 2(a). A similar act is now found in 53 Pa. Cons. Stat. §§ 2901-3171.

Township Fire Department provides fire protection and firefighting services to the Township and its residents. During the relevant period, the Fire Department consisted of five all-volunteer fire companies: Glenside Fire Company (Station 1), LaMott Fire Company (Station 2), Elkins Park Fire Company (Station 3), Cheltenham Hook and Ladder Company (Station 4), and Ogontz Fire Company (Station 5).[4] Each of the volunteer fire companies had its own Fire Chief, but there was no single Chief of the entire Fire Department.[5] The Township separately employed a Fire Marshal who reported directly to the Township Manager, who in turn reported directly to the BOC.[6]

Ogontz Fire (Station 5), Plaintiff and Counterclaim Defendant, is a private not-for-profit Pennsylvania corporation.[7] Its Charter, as approved and recorded by the Montgomery County Court of Common Pleas, states that "[t]he corporation is desirous of holding and owning real estate for the purpose of using it and enjoying it as a fire engine and hose house and a place of meeting for the transaction of business of the corporation by its members . . . ."[8] On December 19, 1974, Ogontz Fire entered into an Indenture with the Township for the land bounded by Green Briar Road, Old York Road Spur, and Old York Road ("Ogontz Property").[9] The Indenture, which was recorded in the Recorder of Deeds, provides a 99-year lease for the Ogontz Property and states as follows:

> TO HAVE AND TO HOLD the said premises for and during the term of ninety-nine (99) years [. . .]

---

[4] Compl. ¶ 39 [Doc. No. 1].

[5] Compl. ¶ 72 [Doc. No. 1].

[6] Compl. ¶ 73 [Doc. No. 1].

[7] Compl. ¶ 11 [Doc. No. 1].

[8] Compl. ¶ 33 [Doc. No. 1].

[9] Compl. ¶ 43, 35 [Doc. No. 1].

> 3. The Lessor [Township] hereby covenants with the Lessee [Ogontz Fire] as follows: (1) That the said Lessee on paying the said yearly rent [of $1.00] and performing said covenants on his part shall and may peaceably and quietly have, hold and enjoy the demised premises during the term aforesaid.[10]

The Counterclaim and Motion to Dismiss presently before the Court are both based on the Indemnity Provision of the Indenture, which reads:

> 2. The Lessee [Ogontz Fire], to the intent that the obligation may continue throughout the term hereby created, covenants with the Lessor [Township] as follows:
>
> . . .
>
> (11) To indemnify the Lessor [Township] against all costs and expenses, including counsel fees, lawfully and reasonably incurred in or about the premises, or in defense of any action or proceeding, or in discharging the premises from any charge, lien or encumbrance, or in obtaining possession after default of the Lessee [Ogontz Fire] or the determination of this lease and to maintain fire and liability insurance protecting both the Lessee [Township] and the Lessor [Ogontz Fire] in such amounts and with companies as may be acceptable to the Township.[11]

On March 5, 1980, Ogontz Fire entered into a Memorandum of Understanding with the Township, which documented Ogontz Fire's agreement to sell its previous firehouse at the corner of York and Church Roads and to construct a new firehouse at its own expense at a cost not to exceed $500,000.[12] In return, the Township conveyed its intent to purchase the new firehouse after its construct at a price equal to its construction costs, after which Ogontz Fire would lease the firehouse back from the Township for amortized rental payments over 20 years.[13] The Memorandum of Understanding contemplated that Ogontz Fire would have the right to purchase the firehouse for $1.00 upon completion of the 20-year lease.[14]

---

[10] Compl. ¶ 42-45 [Doc. No. 1].

[11] Mot. Dismiss Countercl. Ex. A [Doc. No 26-1].

[12] Compl. ¶ 49 [Doc. No. 1].

[13] Compl. ¶ 49-50 [Doc. No. 1].

[14] Compl. ¶ 50 [Doc. No. 1].

On December 24, 1980, Ogontz Fire and the Township entered into a Lease-Purchase Agreement, whereby Ogontz Fire lease-purchased the new firehouse for 20 years.[15] The Lease-Purchase Agreement incorporated the Indenture, including Ogontz Fire's continuing 99-year lease of the Ogontz Property, but the Agreement did not contain any provisions requiring that the property be used as a firehouse.[16] Ogontz Fire made its annual payments over 20 years, totaling $960,986.50: $500,000 in principal and $460,986.50 in interest.[17] In 2000, at the end of the 20-year period, Ogontz Fire purchased the firehouse for $1.00.[18] Plaintiffs contend that, in addition to Ogontz Fire's ownership of the firehouse, Ogontz Fire also has a continuing right to use the Ogontz Property pursuant to the 99-year lease, until on or about December 19, 2073.[19]

### B. Procedural Background

Plaintiffs Ogontz Fire and Arthur Gordon filed suit against the Township, the Board of Commissioners of Cheltenham Township, and the Cheltenham Township Fire Board alleging constitutional violations under 42 U.S.C. § 1983 and various state law violations arising from the Board of Commissioners' decertification of Ogontz Fire. Defendants then filed a motion to dismiss for failure to state a claim, which the Court granted in part and denied in part, giving leave to Plaintiffs to file an Amended Complaint.[20] Plaintiffs declined to file an Amended Complaint, and remaining Defendant Cheltenham Township filed its Answer and

---

[15] Compl. ¶ 51, 53 [Doc. No. 1].

[16] Compl. ¶ 52-54 [Doc. No. 1].

[17] Compl. ¶ 55 [Doc. No. 1].

[18] Compl. ¶ 56 [Doc. No. 1].

[19] Compl. ¶ 57, 59-60, 379, 381 [Doc. No. 1].

[20] *See* Mem. Op. [Doc. No. 16]; Order [Doc. No. 17].

Counterclaim.[21] Plaintiff Ogontz Fire then filed this Motion to Dismiss Defendant's Counterclaim.[22]

At the parties' request, litigation was stayed for approximately eight months while the parties attempted resolution through private mediation.[23] Private mediation having been unsuccessful, the Court lifted the stay.[24] Now, Ogontz Fire's Motion to Dismiss Cheltenham Township's Counterclaim is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

For the purposes of deciding a motion to dismiss under Rule 12(b)(6), claims and counterclaims are treated the same.[25] To survive a motion to dismiss, a counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26] In evaluating the sufficiency of a counterclaim, the court accepts all the well-pleaded factual allegations as true and draws all reasonable inferences in favor of the counterclaimant.[27] "A claim has facial plausibility when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged."[28] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[29]

---

[21] Answer & Countercl. [Doc. No. 20].

[22] Mot. Dismiss Countercl. [Doc. No. 26].

[23] *See* Doc. Nos. 29, 30, 31, 32, 33.

[24] Order [Doc. No. 34].

[25] *See Key Star Partners, LLC v. Insignia Disposal Servs., LLC*, No. 22-2338, 2023 WL 2920283, at *4 (E.D. Pa. Apr. 12, 2023).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

[27] *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024).

[28] *Iqbal*, 556 U.S. at 678.

[29] *Id.*

**III.    DISCUSSION**

The Township brings a counterclaim of indemnification against Ogontz Fire, alleging that the Indenture pertaining to the Ogontz Property requires Ogontz Fire to indemnify the Township for all its expenses related to this litigation. The counterclaim makes no allegations that the Township has paid anything—costs, expenses, or counsel fees—yet.

To state a claim for contractual indemnification, a claimant must show that a valid contract for indemnification exists and that the claim for indemnification falls within the scope of the agreement.[30] A claim for contractual indemnification is ripe only after expenses associated with the indemnification are actually paid.[31]

The parties do not dispute that a valid contract for indemnification exists. Rather, at issue is: A) whether the claim for indemnification falls within the scope of the agreement and B) whether the claim is ripe.

> **A.    The Township's claim for indemnity does not fall within the scope of the agreement.**

First, Ogontz Fire argues that "[t]he language of the 1974 Indenture does not state or even suggest that the indemnification clause would apply to such first party disputes between the contracting parties such as [the Township's] breach of its agreements with Ogontz Fire."[32]

The construction of an indemnity contract is a question of law for the court to decide.[33] The parties do not dispute that Pennsylvania law applies to this counterclaim. Under Pennsylvania law, indemnification agreements are to be "narrowly interpreted in light of the

---

[30] *McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa. Super. Ct. 1991); *Int'l Fid. Ins. Co. v. DHLP – Limerick Golf Cmty., L.P.*, No. 15-3291, 2017 WL 550585, at *2 (E.D. Pa. Feb. 10, 2017).

[31] *F.J. Schindler Equip. Co. v. Raymond Co.*, 418 A.2d 533, 534 (Pa. Super. Ct. 1980).

[32] Pls.' Mem. Law Supp. Mot. Dismiss Def.'s Countercl. at 2-3 [Doc. No. 26].

[33] *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).

parties' intentions as evidenced by the entire contract."[34] Moreover, the court must strictly construe the scope of an indemnity contract against the party seeking indemnification.[35] "If the indemnity clause is clear and unambiguous, then the intentions of the parties should be ascertained primarily by looking to the language used in the agreement. Only where the court finds ambiguity may it consider the circumstances under which the contract was signed. The mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous."[36]

If the parties intended for the Indenture to provide for indemnification for the Township's alleged intentional breach of the Indenture itself, or for its alleged intentional violations of Ogontz Fire's civil rights, the prevailing and "well-settled" law would require "clear and unequivocal" language to that effect.[37] The Indemnity Provision provides no such language:

> 2. The Lessee [Ogontz Fire], to the intent that the obligation may continue throughout the term hereby created, covenants with the Lessor [Township] as follows:
>
> . . .
>
> (11) To indemnify the Lessor [Township] against all costs and expenses, including counsel fees, lawfully and reasonably incurred in or about the premises, or in defense of any action or proceeding, or in discharging the premises from any charge, lien or encumbrance, or in obtaining possession after default of the Lessee [Ogontz Fire] or the determination of this lease and to maintain fire and liability insurance protecting both the Lessee [Ogontz Fire] and the Lessor [Township] in such amounts and with companies as may be acceptable to the Township.[38]

---

[34] *Burlington Coat Factory of Pa., LLC v. Grace Constr. Mgmt. Co.*, 126 A.3d 1010, 1022 (Pa. Super. Ct. 2015) (quoting *Consol. Rail Corp. v. Del. River Port Auth.*, 880 A.2d 628, 632 (Pa. Super. Ct. 1980)).

[35] *Dilks v. Flohr Chevrolet, Inc.*, 192 A.2d 682, 687 (Pa. 1963); *Brown v. Moore*, 247 F.2d 711, 722-23 (3d Cir. 1957), *disapproved on other grounds*.

[36] *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) (internal citations omitted).

[37] *See Prosperi v. Twp. of Scott*, No. 06-501, 2007 WL 9782934, at *2 (W.D. Pa. Jan. 23, 2007). This is known as the *Perry-Ruzzi* rule. *See Ruzzi v. Butler Petroleum Co.*, 588 A.2d 1, 4 (Pa. 1991); *Perry v. Payne*, 66 A. 553, 555-56 (Pa. 1907).

[38] Mot. Dismiss Countercl. Ex. A [Doc. No 26-1].

This alone is enough for the Court to hold that the Indemnification Provision clearly does not encompass the indemnification claim at issue here.[39]

The Township ignores the fact that the Indemnity Agreement fails to explicitly and unequivocally indemnify against the claimant's own actions, and instead points to how the agreement "requir[es] indemnification for the 'defense of *any* action or proceeding,'" urging that the expansive language of the indemnification agreement "extends to the plaintiff's action here."[40] The Township argues that "[p]laintiff points to no language limiting the indemnity obligation to the third-party claims, and the express extension of the lease beyond the defense of third party claims, as discussed above, precludes a finding at the motion to dismiss phase that the words 'defense of any action' somehow exclude the defense of the claims plaintiff brings in this case."[41] The Township's argument, however, gets the standard exactly backward. Pennsylvania courts regularly and specifically rule against indemnification in actions arising from the claimant's own actions—negligent or intentional—where the contract at issue contains only such "words of general import."[42]

Moreover, "in cases where *Perry-Ruzzi* rule is not applicable, Pennsylvania law dictates that we look to general principles of contract interpretation to determine if [the indemnitor] would be obligated to defend [the indemnitee] in this matter."[43] The Court merely needs to consider the facts of the present case to recognize that the Township's argument is patently

---

[39] *See also Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Env't Infrastructure Inc.*, 439 F. Supp. 3d 407, 438 (E.D. Pa. 2020) (collecting cases agreeing that an indemnity provision with broad language is limited to third-party claims).

[40] Resp. Mot. Dismiss Countercl. at 3-4 [Doc. No. 27].

[41] *Id.*

[42] *Dilks*, 192 A.2d at 688.

[43] *Prosperi*, 2007 WL 9782934, at *4.

deficient. Considering whether Ogontz Fire would be required to defend the Township *against Ogontz Fire's own lawsuit* answers the question succinctly: this argument is ridiculous on its face. But the Township urges the Court to read the indemnity agreement to require this dizzying conclusion. The Township asks the Court to accept that Ogontz Fire intended to indemnify the Township *for all costs*—including the Township's legal fees associated with defending the Township against suits Ogontz Fire itself brings in good faith against the Township. Construing the indemnification agreement strictly against the Township, the Court cannot accept that Ogontz Fire intended the indemnity agreement to essentially give the Township immunity from suit by Ogontz Fire.[44]

Because the Township has not sufficiently pled that its indemnity claim is covered by the Indemnification Agreement, the Court will grant Ogontz Fire's motion to dismiss and dismiss the Township's counterclaim.

### B.    The Township's claim is premature.

Next, Ogontz Fire argues that the Township's claim is premature. While the indemnity sought here does not remotely fall within the scope of indemnity agreement, even if it did, the Township's indemnification claim is premature as a matter of law.

"Under Pennsylvania law, unless a loss has actually been incurred, an indemnity claim for that loss is premature."[45] Indeed, "before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment,

---

[44] *See Jacobs Constructors, Inc.*, 264 F.3d at 374 ("Consistent with the policy of the Pennsylvania Supreme Court as demonstrated in the *Perry–Ruzzi* doctrine, we will not endorse the silent shifting or involuntary assumption of obligations that an indemnitor ordinarily would not likely undertake. To do otherwise would be to transform definitive indemnification agreements into open-ended guarantees in the nature of insurance policies.").

[45] *Key Star Partners, LLC*, 2023 WL 2920283, at *7.

as in the present case, is premature."[46] "Because the right to indemnification does not arise until payment is made, the party seeking indemnity is not prejudiced by being denied the pursuit of any claim prior to that time."[47]

"[T]he mere expenditure of counsel fees does not constitute the accrual of a cause of action for indemnification."[48] Further, "the appropriateness and reasonableness of the counsel feels and costs allegedly incurred to date cannot be determined until the underlying actions are resolved."[49]

Here, no verdict or judgment has been rendered, and no payment has been made. The expenditure of counsel fees here does not constitute the accrual of a cause of action.[50] In fact, the Township has not even pled—with particularity or at all—that it has made *any* payment. The Counterclaim makes only three allegations: (1) that the parties entered into an Indenture; (2) the language of the Indenture; and (3) that the Indenture entitles the Township to "costs and expenses, including counsel fees, arising out of Ogontz [Fire]'s present suit against [the] Township."[51] The Township does not plead that it has paid costs and expenses, or even that it has paid any legal fees. It simply alleges that the indemnification claim *would* apply to such costs. Accordingly, its indemnification claim is premature.

---

[46] *F.J. Schindler Equip. Co.*, 418 A.2d at 534. *See also McClure*, 585 A.2d at 23 ("Under Pennsylvania law, actual payment, and not just a verdict or judgment, is required.").

[47] *McClure*, 585 A.2d at 23 (citing *Nat'l Liberty Life Ins. Co. v. Kling P'Ship*, 504 A.2d 1273 (Pa. Super. Ct. 1986)).

[48] *Id.*

[49] *Id.* at 22-23.

[50] Contrast this counterclaim with that in *Key Star Partners*, where Judge Baylson found that legal fees *and losses due to the plaintiff's actions* were sufficient for the indemnification counterclaim to survive a Rule 12(b)(6) challenge. 2023 WL 2920283, at *8.

[51] Answer & Countercl. at 21 [Doc. No. 20].

As explained above, the Court dismisses the Township's indemnification claim because indemnification of this type is not explicitly contemplated in the indemnification agreement. However, in the alternative, the Township's indemnification claim is premature as no payment has been made.

## IV. CONCLUSION

For the reasons stated above, Ogontz Fire's motion to dismiss the counterclaim will be granted and the Township's counterclaim will be dismissed with prejudice. An order will be entered.