**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **OGONTZ FIRE COMPANY,**<br><br>       **Plaintiff,**<br><br>  **v.**<br><br>**CHELTENHAM TOWNSHIP**<br><br>       **Defendant.** | **CIVIL ACTION NO.  23-569** |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**Rufe, J.**                                                                                                    **April 9, 2026**

In 2023, Ogontz Fire Company ("Ogontz Fire") filed this action after it was decertified as one of Cheltenham Township's volunteer fire companies. The Court has dismissed various claims and parties from this case, but it has allowed Ogontz Fire to proceed on certain constitutional claims and a breach of contract claim.[1] Now pending is Ogontz Fire's motion to compel discovery of documents that the Township withheld or redacted based on assertions of privilege and other protections. The Court will grant the motion in part and deny it in part.

The Federal Rules of Civil Procedure outline the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[2]

---

[1] The factual background of this case is well documented in the Court's prior opinions of March 14, 2024, and July 16, 2025.

[2] Fed. R. Civ. P. 26(b)(1).

"Decisions regarding motions to compel discovery have long been 'committed to the sound discretion of the district court.' "[3] Ogontz Fire seeks to compel production of discovery material that the Township withheld on grounds of deliberative process privilege, the work-product protection, attorney-client privilege, and lack of relevance.[4]

## I.    DELIBERATIVE PROCESS PRIVILEGE

"The deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.' "[5] This privilege accommodates the government's interest in a "frank exchange of ideas and opinions," which enhances the quality of its decisions.[6] If the government "makes a sufficient showing of entitlement to the privilege," the burden shifts to the party seeking discovery material to demonstrate a "sufficient need for the material."[7] Courts will bypass the deliberative process privilege if the party requesting discovery has challenged whether the governmental agency rendered its decision on an improper basis.[8]

Ogontz Fire has done just that—by submitting that the Township's decertification decision was driven by "racial animus, personal animus, [and] political and economical gain."[9]

---

[3] *Washington v. Link*, No. 16-3424, 2020 WL 6060480, at *1 (E.D. Pa. Oct. 14, 2020) (quoting *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974)).

[4] Pl.'s Mem. L. Supp. Mot. Compel ("Pl.'s Mem.") [Doc. No. 50].

[5] *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)).

[6] *Id.* at 854 (quoting *First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994)).

[7] *Id.* (quoting *In re Grand Jury*, 821 F.2d at 959)*; Del. Riverkeeper Network v. Del. River Basin Comm'n*, 300 F.R.D. 207, 211-12 (D.N.J. 2014).

[8] *See Del. Riverkeeper Network*, 300 F.R.D. 207 at 213-14; *In re Subpoena Duces Tecum Served on the Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("[O]ur holding that the deliberative process privilege is unavailable is limited to those circumstances in which the cause of action is directed at the agency's subjective motivation."). In *Delaware Riverkeeper Network*, the court noted that "[c]ourts in the Third Circuit have frequently cited and relied upon the case law of the U.S. Court of Appeals for the D.C. Circuit when the government invokes the deliberative process privilege." 300 F.R.D. 207 at 213-14.

[9] Compl. ¶¶ 348, 363 [Doc. No. 1].

The Township's interest in shielding its decision-making process is therefore overridden. And, at any rate, the Township conceded this issue.[10] To the extent that production has not occurred, the Court will compel the Township to produce unredacted versions of the following documents, withheld solely based on deliberative process privilege:

- CT 56, 200, 201-202, 832, 855, 857, 858, 904, 959, 982-983, 997-1000, 1012-1015, 1018-1021, 1066, 1068, 1072, 1073, 1075, 1077, and 1083.[11]

## II.    WORK PRODUCT

The work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for a trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."[12] Materials constituting work product may still be produced if they are discoverable under Rule 26(b)(1) and if the requesting party shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[13] In permitting this discovery, courts must "protect against disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."[14]

"A document is prepared in anticipation of litigation when 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have

---

[10] Def.'s Resp. Mot. Compel ("Def.'s Resp.") at 2-3 [Doc. No. 51].

[11] The page numbers ascribed to these documents are the Bates numbers in the Township's privilege logs. *See, e.g.*, 2/2/26 Privilege Log [Doc. No. 51-1]. The Court is ordering production of all documents in the Township's Privilege Log of September 19, 2025, that have not yet been disclosed and for which "DPP" was listed as the only purported privilege. The Township has agreed to produce Document 959. Def.'s Resp. at 3 [Doc. No. 51]. Although Ogontz Fire also seeks production of CT 1069-1070 and 1079-1080, those documents are subject to an assertion of attorney-client privilege, *see id.* at 3-4, so the Court addresses those requests when considering attorney-client privilege.

[12] Fed. R. Civ. P. 26(b)(3)(A).

[13] Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

[14] Fed. R. Civ. P. 23(b)(3)(B).

been prepared or obtained because of the prospect of litigation.' "[15] Yet, materials created in the ordinary course of business, or in compliance with public requirements unrelated to litigation, are unprotected.[16] The party claiming a work-product protection has the burden to show the doctrine applies.[17]

Ogontz Fire seeks production of documents that it says the Township has misclassified as work product.[18] The documents requested are: "552 (top email), 671-672, 751 (bottom email)-752, 754-755, 756 (bottom email)-758, 759-760, 785, 791, 872 (reproduced 11/11/25 unredacted except for top email on pg 872), 7003, 7027-7028 (reproduced 11/11/25 with revised redactions), 7036, 7038 (reproduced 11/11/25 with revised redactions), 7050-7057, 7096-7099, 7126."[19] Ogontz Fire contends that the work-product doctrine extends to the work, notes, and impressions of the Township's attorneys and "representative[s]," but excludes materials prepared in anticipation of litigation by employees, officers, or party witnesses.[20] The Township disagrees, providing item-by-item explanations for why the doctrine applies.[21]

Ogontz Fire's argument conflicts with the wording of Rule 26(b)(3). By its terms, the Rule shields from discovery any material that is "prepared in anticipation of litigation or for trial by or for *another party or its representative*."[22] The items sought by Ogontz Fire adhere to this

---

[15] *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, No. 19-cv-4016, 2021 WL 2156367, at *4 (E.D. Pa. May 27, 2021) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)).

[16] *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing Fed. R. Civ. P. 26(b)(3) Fed. R. Civ. P. 26(b)(3) advisory committee note).

[17] *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

[18] Pl.'s Mem. at 16-18 [Doc. No. 50].

[19] *Id.* at 18. The pagination of these documents is as listed in the Township's privilege logs and prefaced with the designation "CT."

[20] *Id.* at 17.

[21] Def.'s Resp. at 4-10 [Doc. No. 51].

[22] Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

definition. To begin with, the redactions to CT pages 751-752, 754-755, 756-758, and 759-760 involve an email from the Township's Public Works Superintendent to the Township Manager regarding information learned from an Ogontz Fire member.[23] That email was immediately forwarded to the Township's then-counsel, Solicitor Joseph Bagley, for review amidst ongoing legal proceedings in Montgomery County in 2021.[24] Because CT pages 751-752, 754-755, 756-758, and 759-760 concern an email that was directed to the Township's attorney in regard to ongoing litigation, they are protected work product.

A similar result applies to CT pages 785, 791, 872, 7003, 7027-7028, 7036, and 7038. While these pages do not list Solicitor Bagley as a recipient, they concern communications to or from Township Commissioner Mitchell Zygmund-Felt about the threat of litigation, the need to consult with Solicitor Bagley, or the strategies and impressions of the Township's officials regarding ongoing litigation.[25] Several of these pages include messages involving another Commissioner or the Township Manager. Given their high-ranking positions, the Township's Commissioners and Township Manager are situated to make final and far-reaching decisions on behalf of the Township. They fall comfortably into the category of party representatives and agents to which the work-product doctrine applies.[26]

---

[23] 2/2/26 Privilege Log at 7-8 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at pp. 19-28]; Montgomery County Docket at 1 [Doc. No. 51-1]. As a preliminary matter, the Court will accept that CT page 552 is work product and subject to attorney-client privilege, as Ogontz Fire has not dispelled the Township's explanation that this document contains direct communications with Attorney Cummins. *See* 9/19/25 Privilege Log at 2 [Doc. No. 50-2]. The Court does not address whether pages CT 671-672 are work product because the Township clarified that it withheld these pages on grounds of relevance. Def.'s Resp. at 6 [Doc. No. 51].

[24] 2/2/26 Privilege Log at 7-8 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at p. 19].

[25] 2/2/26 Privilege Log at 9, 16 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at pp. 29, 31, 38, 172-74, 176-77].

[26] *See In re Ampicillin Antitrust Litig.*, MDL Docket No. 50 (Misc. 45-70), 1978 WL 1355, at *2 (D.D.C. May 8, 1978) (observing that the reference to "the party" in Rule 26(b)(3) encompasses, at a minimum, officers, directors, and managing agents); *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 648 (E.D. Cal. 2010) (board members' mental impressions, conclusions, opinions, or legal theories, were protected work product and not discoverable).

The Court also agrees with the Township that communications between the Township's lower-ranking officials about ongoing litigation are work product. District courts (including within the Third Circuit) recognize internal messaging among employees as work product if done in anticipation of litigation,[27] and the Court finds those precedents persuasive. Like the communications involving Commissioner Zygmund-Felt, the relevant communications among lower-ranking Township officials occurred after Ogontz filed its state lawsuit against the Township on February 4, 2021.[28] These communications—some of which were recorded on the day of the officials' testimony in state court—were not in the ordinary course of business but rather in relation to the Township's defense against Ogontz Fire's lawsuit, and amounted to an extension of their attorneys' preparation of the case. For these reasons, CT pages 7050-7057, 7096-7099, and 7126 qualify as work product.

Ogontz Fire contends it has a substantial need for the Township's work-product material because these items may explain the motivation behind Ogontz Fire's decertification.[29] Without *in camera* inspection, the Court is ill-prepared to say whether the protected documents would reveal an improper motive. Hence, the Court will grant Ogontz Fire's request for an *in camera* review, but only on the issue of substantial need, and only for documents that predated the

---

[27] *See Cincon v. State Farm Mut. Auto. Ins. Co.*, No. 3:L4-CV-2187, 2015 WL 5021736, at *3-4 (M.D. Pa. Aug. 21, 2015); *McCrink v. Peoples Benefit Life Ins. Co.*, No. 04-cv-1068, 2004 WL 2743420, at *7 (E.D. Pa. Nov. 29, 2004); *S.G.D. Eng'g, Ltd. v. Lockheed Martin Corp.*, No. CV-11-02493-PHX-DGC, 2013 WL 2297175, at *9-10 (D. Ariz. May 24, 2013); *Villaflor v. State Farm Mut. Auto.*, No. 2:07-CV-13939, 2008 WL 11355455, at *2 (E.D. Mich. Oct. 14, 2008); *Galvin v. Hoblock*, No. 00 Civ. 6058, 2003 WL 22208370, at *6 (S.D.N.Y. Sept. 24, 2003). The cases cited by Ogontz Fire, *Ockford v. Encompass Ins. Co.*, No. 24-1581, 2024 WL 4437820 (E.D. Pa. Oct. 7, 2024); *Maiden Creek T.V. Appliance, Inc. v. Gen. Cas. Ins. Co.*, No. Civ.A. 05-667, 2005 WL 1712304, at *1 (E.D. Pa. July 21, 2005), are distinguishable—*Ockford* dealt with a motion to compel insurance claim files that predated the threat of litigation, and *Maiden Creek* involved documents that "appear[ed] to have been prepared in the ordinary course of business."

[28] 2/2/26 Privilege Log at 16-17 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at pp. 178-90].

[29] Pl.'s Mem. at 18 [Doc. No. 50].

Township's adoption of the decertification ordinance or that originated in the month thereafter. As such:

- The Court will conduct an *in camera* review of CT 751-760, 785, 791, 872, 7027-7028, 7050-7057, and 7096-7099.

- The Court will deny the motion to compel as to the other work-product materials: CT 552, 7003, 7036, 7038, 7126.

## III.    ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege shields from discovery "(1) communication[s] (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[30] " 'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation."[31] The party asserting an attorney-client privilege has the burden to show that the privilege applies.[32] "[R]outine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda."[33]

Ogontz Fire argues that the Township cannot withhold discovery on the grounds of attorney-client privilege merely because the documents were " 'passed through' or copied to attorneys."[34] It therefore seeks production of CT "955-956, 1036-1038, 1057-1060 (part of

---

[30] *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)).

[31] *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (citing *In re Teleglobe*, 493 F.3d at 359).

[32] *See In re Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979).

[33] *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 478 (E.D. Pa. 2005) (quoting *Andritz Sprout–Bauer, Inc. v. Beazer E., Inc.,* 174 F.R.D. 609, 633 (M.D. Pa. 1997)).

[34] Pl.'s Mem. at 19-20 [Doc. No. 50]. Ogontz Fire also cites *Freedman & Gersten, LLP v. Bank of Am., N.A.*, No. 09-5351 (SRC) (MAS), 2010 WL 5139874 (D.N.J. Dec. 8, 2010), in support of its argument, but that case is not determinative because, there, the attorney was initially conducting an internal investigation rather than representing a party in connection with litigation.

chain), 1061-1063 (part of chain), 1067, 1110-1112, 1117-1118, 1137-1140, 1141-1144 (part of chain), 1151-1153, 1159-1160, 1167-1168."[35] The Township produced CT 955-956 and 1067 and says it will produce CT 1036-1038.[36] Accordingly, the Court will order the production of CT 1036-1038 to the extent that Ogontz Fire has not received these documents. The Township clarifies that the redactions to CT 1057-1058 and 1061-1063 were on other grounds,[37] and it maintains that attorney-client privilege applies to the other documents sought by Ogontz Fire.[38] With two exceptions, the Court agrees that the Township properly claimed attorney-client privilege.

The Township's Privilege Log explains that CT 1141-1144, 1151-1153, 1159-1160, and 1167-1168 are part of a single email chain originating from Commissioner Zygmund-Felt's January 9, 2020 email to the former Township Manager and Solicitor Bagley.[39] The Privilege Log describes that, in the relevant email, Zygmund-Felt asked for Attorney Bagley's "guidance" in a matter concerning Ogontz Member Phil Washington.[40] This email was not widely disseminated, but rather aimed at obtaining advice from Attorney Bagley on a specific, non-routine matter. Accordingly, the Township established that the communication was for the purpose of securing legal advice and thereby privileged.[41] It stands to reason that follow-up

---

[35] Pl.'s Mem. at 20 [Doc. No. 50]. Ogontz Fire also argued that many of the items that the Township claimed as work product (e.g., CT 751-760, 785, 791, 872) were not subject to the attorney-client privilege. *Id.* The Township clarified that those documents "have not been withheld based on attorney-client privilege, but instead as generated in anticipation of litigation or for trial, or as not reasonably calculated to lead to the discovery of relevant or admissible evidence." Def.'s Resp. at 15 [Doc. No. 51].

[36] Def.'s Resp. at 11-12 [Doc. No. 51].

[37] *Id.* at 12.

[38] *Id.* at 12-14 [Doc. No. 51].

[39] 2/2/26 Privilege Log at 13-14 [Doc. No. 51-1].

[40] *Id.*

[41] *See SmithKline Beecham Corp*, 232 F.R.D. at 478 (noting that emails that are less widely shared are more likely to satisfy the requisites of attorney-client privilege).

messages on this email chain, which likewise deal with Phil Washington and copy Attorney Bagley,[42] are also privileged. Similarly, CT 1137-1140, a four-page email on August 31, 2020, from Commissioner Rappoport addressed to "Joe [Bagley] and Colleagues" on the subject "IMMEDIATE about Fire Companies,"[43] is privileged since Bagley's role as a recipient was central to the communication rather than merely incidental to ordinary business. Finally, CT 1079-1080[44] qualifies as privileged because it is a direct communication from the Township Manager to Attorney Bagley about "Ogontz FC," to which Attorney Bagley responded in detail. The circulation of emails to other Township officials did not cause a waiver.[45]

A review of the Privilege Log cannot confirm whether pages CT 1110-1112 and 1117-1118 are privileged. Unlike the other emails, the one here from Commissioner Rappoport to other officials does not show that Rappoport sought Attorney Bagley's legal advice apart from the fact that he was copied on the email. The Court will undertake an *in camera* review.

Similarly, *in camera* review is necessary to determine whether the communication in CT 1069-1070 was for the purpose of obtaining legal advice. These pages are of an email from the Township Manager to five others, including Attorney Bagley, seeking review of a draft press release.[46] The only response was from a different individual—not Attorney Bagley—so it appears reasonably plausible that the email was sent to request business advice from other Township officials as opposed to legal advice.[47] In summary:

---

[42] 2/2/26 Privilege Log at 13-14 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at pp. 128-39, 146-47].

[43] 2/2/26 Privilege Log at 13 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at pp. 114-15].

[44] 2/2/26 Privilege Log at 12 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at p. 122].

[45] *See SmithKline Beecham Corp.*, 232 F.R.D. at 477 ("Presence of a third-party . . . does not destroy the attorney client-privilege where that party is the client's agent or possesses 'a commonality of interest with the client.' " (quoting *In re Grand Jury Investigation*, 918 F.2d 374, 389 n. 20 (3d. Cir. 1990))).

[46] 2/2/26 Privilege Log at 11 [Doc. No. 51-1]; Redactions of CT Pages [Doc. No. 50-15 at pp. 105-06].

[47] *See F.T.C. v. Abbvie, Inc.*, No. 14-5151, 2015 WL 8623076, at *3 (E.D. Pa. Dec. 14, 2015) ("[T]he corporation must clearly demonstrate that the communication in question was made for the express purpose of securing legal not

- The Court will conduct an *in camera* review of CT 1069-1070, 1110-1112, and 1117-1118.

- The Court will deny the motion to compel as to CT 1079-1080, 1141-1144, 1151-1153, 1159-1160, and 1167-1168.

## IV.    DOCUMENTS WITHHELD FOR LACK OF RELEVANCE

Finally, Ogontz Fire seeks unredacted copies of documents that the Township deems "not reasonably calculated to lead to discovery of relevant or admissible evidence."[48] The requested documents are: "CT 671-672, 1027-1029, 1039-1040, 1045-1046, 1050-1051, 1057, 1061 (reproduced 11/11/25 with revised redactions), 1078 (not redacted, some attachments not produced some produced on 11/11/25-see CT 7134-7139), 1282-1299, 6998, 7027-7028 (reproduced 11/11/25 with revised redactions), 7038 (reproduced 11/11/25 with revised redactions), 7126-7128."[49] CT 1078 has already been produced, and the Township states that CT 1283-1296 will be produced;[50] the Court will order production of CT 1283-1296 to the extent Ogontz Fire has not received these pages. The Township adds that CT 7027-7028, 7038, and 7126-7128 were only withheld under the work-product doctrine.[51] The Township disputes Ogontz Fire's other requests.

CT 671-672 involves jokes between a Fire Chief and Fire Marshall Scott Lynch about Lynch being named in Ogontz Fire's lawsuit.[52] Lynch is a fact witness, so the Court is inclined to compel disclosure of this exchange given its plausible relevance to state of mind.

---

business advice." (quoting *Kramer v. Raymond Corp.*, No. 90-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992)).

[48] Pl.'s Mem. at 20-21 [Doc. No. 50]; 2/2/26 Privilege Log at 1 [Doc. No. 51-1].

[49] Pl.'s Mem. at 21 [Doc. No. 50].

[50] *See* Def.'s Resp. at 17 [Doc. No. 51].

[51] *Id.* at 17-18.

[52] 2/2/26 Privilege Log at 6 [Doc. No. 51-1].

CT 1027-1029, 1039-1040, 1045-1046, 1050-1051, 1057, and 1061 are copies of emails between Commissioner Zygmund-Felt and Commissioner Areman involving "personal banter."[53] Commissioner Zygmund-Felt is mentioned in the Complaint more than any Commissioner, and this exchange with Areman occurred just two days after the Board of Commissioners purportedly decertified Ogontz Fire. The Court is inclined to compel full disclosure of these documents, as they may bear on Commissioner Zygmund-Felt's state of mind during a relevant time period.

CT 1282 and 1297-1299 concern a firefighter's heart attack and information related to an insurance claim regarding firefighter injuries.[54] Ogontz Fire does not argue why this information is relevant, so the Court is inclined to deny the motion to compel as to this material.

CT 6998 includes a redaction of a statement by Commissioner Zygmund-Felt as to his opinion about other Commissioners.[55] The Court is inclined to compel disclosure of this page, as it may bear on Commissioner Zygmund-Felt's credibility.

The redaction to CT 7029 is of a text from Commissioner Zygmund-Felt to Fire Marshal Scott Lynch about a fire event.[56] Ogontz Fire does not contest this description or offer any argument for why this information is relevant to its case. The Court is inclined to deny the motion to compel as to this material.

Despite these preliminary impressions, the Court will defer a final ruling as to Ogontz Fire's requests under this section of its motion to conduct an *in camera* review. As such:

---

[53] *Id.* at 10-11.

[54] *Id.* at 14.

[55] *Id.* at 15.

[56] *Id.* at 16.

- The Court will conduct an *in camera* review of: CT 671-672, 1027-1029, 1039-1040, 1045-1046, 1050-1051, 1057, 1061, 1282, 6998, and 7029.[57]

## V.    PRIVILEGE LOG

Ogontz Fire also asked for revisions to the Township's September 19, 2025 Privilege Log based on alleged deficiencies.[58] In response, the Township provided an updated log dated February 2, 2026, with more complete information.[59] For instance, entry CT 519-522 now includes the date of an exchange with Attorney Cummins and the parties to that email, their roles, and the email subject.[60] The date remains absent from a small subset of items, including CT 735, 929, and 930.[61] But regardless, other details for those entries explain the grounds for privilege, and Ogontz Fire has not shown why it cannot cross-reference the email headers, which are generally unredacted, to obtain the temporal information. Given the significant improvements to the privilege log, the Court finds no further basis for relief.

**AND NOW**, this 9th day of April 2026, for the reasons set forth, it is hereby **ORDERED** that:

1.    Ogontz Fire's motion to compel discovery [Doc. No. 50] is **GRANTED** in part and **DENIED** in part.

2.    To the extent it has not done so already, Defendant shall produce, within 10 days, unredacted copies of the following items that were previously withheld solely based on

---

[57] Ogontz Fire sought disclosure of CT 7029 in addressing the attorney-client privilege issues in this case. Pl.'s Mem. at 20 [Doc. No. 50]. Because the Township has withheld it on relevance grounds, the Court will consider CT 7029 during *in camera* review only as it relates to its relevance under Rule 26(b)(1).

[58] Pl.'s Mem. at 22-23 [Doc. No. 50].

[59] *See* 2/2/26 Privilege Log [Doc. No. 51-1].

[60] *Compare* 9/19/25 Privilege Log at 1 [Doc. No. 50-2] *with* 2/2/26 Privilege Log at 2 [Doc. No. 51-1].

[61] Examples include CT 735, 929, and 930. *See* Privilege Log at 7, 9-10 [Doc. No. 51-1].

deliberative process privilege: CT 56, 200, 201-202, 832, 855, 857, 858, 904, 959, 982-983, 997-1000, 1012-1015, 1018-1021, 1066, 1068, 1072, 1073, 1075, 1077, and 1083.

3.      To the extent it has not already done so, Defendant shall produce, within 10 days, unredacted versions of the following items that Defendant concedes as discoverable: CT 1036-1038 and 1283-1296.

4.      The Court will conduct an *in camera* review of the following work-product documents to discern whether Ogontz Fire has established a substantial need: CT 751-760, 785, 791, 872, 7027-7028, 7050-7057, 7096-7099.

5.      The Court will conduct an *in camera* review of the following documents in view of determining whether the attorney-client privilege applies: CT 1069-1070, 1110-1112, and 1117-1118.

6.      The Court will conduct an *in camera* review of the following documents to determine whether they are discoverable under Federal Rule of Civil Procedure 26(b)(1): CT 671-672, 1027-1029, 1039-1040, 1045-1046, 1050-1051, 1057, 1061, 1282, 6998, and 7029.

7.      To facilitate *in camera* review, Defendant shall provide the Court with unredacted versions of the documents identified in Paragraphs 4, 5, and 6.

8.      The motion [Doc. No. 50] is otherwise **DENIED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**